ROBERT ALEXANDER SMITH, A/K/A ROBERT SMITH ALEXANDER; TOM DUNCAN; ALEXANDER AND DUNCAN PRODUCTIONS; ALEX- ANDER PRODUCTIONS, INC., AND OTHERS; UNKNOWN PRO- MOTERS, WHOSE TRUE CHRISTIAN NAMES ARE UNKNOWN; RICHARD ROE AND OTHERS, UNKNOWN CONCESSIONAIRES, WHOSE TRUE CHRISTIAN NAMES ARE UNKNOWN; RONALD POE AND OTHERS, UNKNOWN PERFORMERS INDIVIDUALLY AND AS ORGANIZED GROUPS OF PERFORMERS WHOSE TRUE CHRISTIAN NAMES ARE UNKNOWN; JANE MOE AND OTHERS, UNKNOWN TICKET SELLERS, WHOSE TRUE CHRISTIAN NAMES ARE UN- KNOWN; JOHN DOE AND OTHERS, UNKNOWN PARTICIPANTS AND ATTENDANTS, WHOSE TRUE CHRISTIAN NAMES ARE UN- KNOWN *v.* INDIANA STATE BOARD OF HEALTH; INDIANA STATE POLICE DEPARTMENT; CHARLES T. RACHELS, PROSECUTING ATTORNEY, 11TH JUDICIAL CIRCUIT, INDIANA; WILLIAM M. COX, POSEY COUNTY SHERIFF; POSEY COUNTY BOARD OF

HEALTH; BOARD OF COUNTY COMMISSIONERS OF POSEY COUNTY, INDIANA.

[No. 1-573A78. Filed November 7, 1973. Rehearing denied December 14, 1973. Transfer denied April 19, 1974.]

*John D. Clouse,* of Evansville, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellees.

LOWDERMILK, J.—Oral argument in the above case was held at the Old Territorial Assembly Hall, Vincennes University, Vincennes, Indiana.

Plaintiffs-appellees commenced this action on August 29, 1972, by filing a complaint for injunction in the Posey Circuit Court seeking to enjoin the defendants-appellants from holding a "rock festival" ("Labor Day celebration") in Posey County, Indiana.

On the same day, defendants-appellants filed a motion for change of judge from the Honorable Steve C. Bach, Judge of the Posey Circuit Court, which motion was granted. Later that day, plaintiffs presented a petition for a temporary restraining order to Judge Bach which was granted over the objections of the defendants-appellants.

The restraining order basically enjoined the defendants from advertising, promoting, conducting, selling or giving tickets, operating food and/or drink concessions at the Labor Day celebration and restrained the defendants from in any way holding the rock festival in Posey County, Indiana.

Judge William D. Richardson was selected and qualified as Special Judge. On September 1, 1972, plaintiffs filed the first of two informations for contempt, which information alleged that the defendants were in violation of the restraining order. The trial court issued a rule to show cause to the

defendants and set the same for hearing at 9:00 o'clock A.M. on September 2, 1972.

Hearing was had on the date specified over defendants' objections and the court made findings and rendered judgment holding defendants in contempt.

Thereafter, defendants-appellants filed their affidavit for remission of a fine of $1,000 which had been assessed against them after hearing of the first citation for contempt and the relief requested was by the court denied.

On September 6, 1972, plaintiffs filed a second information for contempt, whereupon the trial court issued the second rule to the defendants to show cause and set the same for hearing on September 8, 1972. Defendants filed verified answer to the second information and the hearing was had.

On October 13, 1972, the court entered findings and judgment holding the defendants in (1) criminal and (2) civil contempt. A second affidavit for remission of fine was filed by the defendants after the court had ordered the fine paid or the defendants sent to jail, which affidavit was overruled and denied by the court.

Motions to correct errors were timely filed on the first and second contempt convictions and were overruled by the court. This is a consolidated appeal from the overruling of the two motions to correct errors.

The motions to correct errors will be discussed herein as the various specifications apply to the issues raised at the two contempt hearings, and specifications which tend to support the same issue will be treated as one. Rule AP. 8.3 (A) (7).

The first issue is common to both hearings and attacks the very basis of the cause. Defendants-appellants contend that Judge Bach, having granted the motion for change of judge, lost all jurisdiction in the cause and acted beyond the scope of his authority when he granted the temporary restraining order. Appellants argue that if Judge Bach er-

roneously granted the restraining order, the resulting contempt convictions necessarily must be reversed, as no contempt can ensue from an invalid restraining order.

We have found no case exactly on point regarding a change of judge, but cases regarding change of venue from the county are similar and the same reasoning would apply to both changes from the county and from the judge. Our Supreme Court, in the case of *Indianapolis Dairymen's Co-op* v. *Bottema* (1948), 226 Ind. 260, 265, 266, 79 N.E.2d 409, in which a temporary injunction was issued and a similar objection was raised, based on lack of jurisdiction, held as follows:

> ". . . It is the general rule that when a proper motion for change of venue from the county is filed the court in which it was filed loses jurisdiction in the case. *State ex rel. Kealing* v. *Clay Circuit Court* (1934), 207 Ind. 259, 263, 192 N.E. 423. But jurisdiction must continue in some court, and *until the court to which the venue was changed acquires jurisdiction by the receipt of transcript, the original court must retain jurisdiction to make any necessary emergency interlocutory orders. . . .*
>
> \* \* \*
>
> ". . . *Delay pending the completion of a change of venue might in many instances deprive parties of the protection afforded by such interlocutory remedies.* The rule that the filing of an affidavit for a change of venue from the county does not deprive the court of jurisdiction to make such interlocutory orders is well settled, and no indication of a recession from this rule is pointed out. . . ." (Our emphasis.)

The policy considerations for the rule enunciated in *Bottema, supra,* were set out in the case of *State ex rel. Gwin* v. *Spencer, Judge* (1942), 220 Ind. 337, 339, 43 N.E.2d 724, as follows:

> ". . . Jurisdiction over the case must necessarily be in some court and some court must necessarily have jurisdiction over the action to make such orders as might be necessary for the protection of the rights of the parties litigant. To hold that the respondent judge in this case had no jurisdiction to make interlocutory orders in such a case would

leave the parties to the action helpless until the venue had been perfected, and jurisdiction vested in the court to which it was sent. In some cases several days or possibly weeks might intervene between the date of filing the motion for a change of venue and the date upon which the case was filed in the county to which the action was venued. In the meantime, property interests might be affected seriously and the welfare of children might be neglected. We are not persuaded that such a situation should receive the endorsement of this court."

This court held, in the case of *Mich. Mut. Liab. Co.* v. *Perez* (1965), 137 Ind. App. 247, 256, 207 N.E.2d 368, that:

"When the application for a change of venue was filed by co-defendant, which is binding upon all defendants, the trial judge before whom the cause was filed lost jurisdiction except in matters of emergency and which matters need prompt determination. . . ."

Dean Harvey has discussed this question and concluded that:

"No change of venue may be taken from such interlocutory proceedings such as hearings upon a preliminary injunction or the granting of a temporary restraining order, and if a change is taken upon the principal action, the judge in which the case is filed may grant a preliminary injunction or temporary restraining order *up until the new judge qualifies. . . .*" (Our emphasis.) 4 Indiana Practice 389, Injunctions, § 65.

It is our opinion that jurisdiction in the cause was retained by Judge Bach for emergency matters, even though a change of judge had been granted. To hold otherwise would not only contravene sound policy considerations and ruling precedent, it would allow a defendant to file for a change of judge simply to divest the local court of emergency jurisdiction.

The next issue raised by the motions to correct errors relates primarily to the first contempt conviction. The defendants allege that the court erred when it denied a requested continuance, tried the defendants in absentia, and proceeded

with the action when no rule to show cause, or any other process, had been served on the defendants.

Plaintiffs had obtained a temporary restraining order enjoining the defendants from conducting the "rock festival" in Posey County, Indiana. The actual site for the festival was on Bull Island which is located in Illinois, but the only land access to the island is from Indiana. To control entry and collect admission fees from the estimated crowd of 60,000 persons, the defendants had set up a stand in Posey County, Indiana. This activity was a violation of the restraining order and prompted the plaintiffs to file an information alleging contempt. The information was filed about 4:30 P.M. on September 1, 1972, and the court issued a rule to show cause which incorporated said information. Although the judgment shows service, the evidence discloses that the defendants were never personally served or given notice of the scheduled hearing set for Saturday, September 2, 1972, at 9:00 A.M. and they were not present in court at that time.

Attorney Clouse, who had appeared generally on behalf of the defendants in the restraining order and continued to represent them, was notified by a representative of the Attorney General's office by telephone at about 7:00 P.M. September 1, 1972, of the filing of contempt proceedings and was told to appear at the hearing the next morning. When he arrived at the court house Attorney Clouse was presented with the information, rule to show cause, notice and order to appear, petition to designate defendant, and a petition for writ of attachment. Court convened before Attorney Clouse had an opportunity to read all of the material.

Attorney Clouse, after explaining the situation to the court, moved for a continuance on the grounds that he needed time to read the material, research the law appropriate thereto, prepare responsive pleadings, prepare a defense, and adequately represent his clients. The court overruled the motions and proceeded with a hearing on the contempt information.

The defendants again moved for a continuance at the close of plaintiffs' case, but the court again overruled the motion. Thereupon, the court found the defendants in contempt, ordered them to remove the ticket booth from Posey County, and fined the defendants $1,000.00

As a preliminary matter we must decide whether the first contempt proceedings were criminal or civil in nature. Our Supreme Court, in the case of *Duemling* v. *Fort Wayne Community Concerts, Inc.* (1963), 243 Ind. 521, 524, 525, 188 N.E.2d 274, has discussed this distinction as follows:

> "It is evidence from that case that a disobedience of a court order which entitles a party to compliance may constitute the basis for either or both a criminal and civil contempt proceeding when the act is done wilfully.

> * * *

> "A civil contempt is a violation of a court order which results in a proceeding for the benefit of the aggrieved party. It is not an offense primarily against the dignity of the court, but rather is for the benefit of the party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party. Therefore, as pointed out in *Denny* v. *State* (1932), 203 Ind. 682, 182 N.E. 313, the primary objective of a civil contempt proceeding is not to punish the defendant, but rather to coerce action for the benefit of the aggrieved party. Punishment in the form of imprisonment or a fine levied against the defendant, which goes to the State and not to the injured party, is characteristic of a criminal proceeding. In a civil contempt action the fine is to be paid to the aggrieved party, and imprisonment is for the purpose of coercing compliance with the order."

In the case at bar the information was filed on behalf of the same plaintiffs as in the restraining order and not strictly on behalf of the State of Indiana. The information did not charge that the defendants had willfully disobeyed the restraining order. The trial court was aware of the distinction, as will be seen in the discussion of the second contempt proceeding. The judgment in this first contempt proceeding

finds the defendants to be in violation of the restraining order, orders them to cease such violations and fined the defendants $1,000.00.

As will be seen later in this opinion, the only criminal contempt found by the trial court was a refusal by the defendants to pay the $1,000.00 fine assessed in the first hearing.

The defendants contend that the errors relating to this issue combine to show that the defendants were denied due process of law. One specification alleges error in that the defendants were not present at the contempt hearing and were, thus, tried in absentia. Cases cited and relied upon by defendants all relate to criminal cases and are inapplicable to this first contempt hearing, as said hearing was based on civil contempt and was not criminal in nature.

The defendants also contend that no notice of the proceedings was served upon them. It is true that the defendants have a right to know the charge which they must defend. The evidence discloses that the defendants were not personally served with the information or rule to show cause. However, their attorney was notified by telephone of the hearing and he appeared on behalf of the defendants at that hearing and was served with the proper papers.

Our Supreme Court, in the case of *State ex rel. Brubaker* v. *Pritchard, Judge, etc.* (1956), 236 Ind. 222, 226, 138 N.E.2d 233, has stated:

". . . When an attorney enters his appearance of record in any litigation, so long as such attorney remains the existing attorney of record, he is the agent of the party, and the party is bound by such attorney's knowledge and notice of the proceedings in that case so long as it is pending."

It is our opinion that service to the attorney was sufficient notice and the defendants cannot complain of lack of notice.

It is stated in 5 I.L.E. 539, *Constitutional Law,* § 219, that:

"A person charged with contempt has the right, as a matter of due process, to be advised of the charges against him, to have a reasonable opportunity to meet those charges by way of defense or explanation, to be represented by counsel and to testify and call other witnesses in his behalf, also by way of either defense or explanation, . . ."

It is fundamental that one who is subject to punishment has a right to be given time to answer. *Levick* v. *Hughlett; Levick* v. *State* (1946), 224 Ind. 561, 69 N.E.2d 17, 69 N.E.2d 597.

Our Supreme Court has held, in the case of *State ex rel. Anderson-Madison etc.* v. *Superior Ct.* (1964), 245 Ind. 371, 382, 383, 199 N.E.2d 88, as follows:

"Directing our attention next to the contempt proceeding here, much the same commentary may be made as in the removal proceedings. The procedure savors too much of emotional hastiness, when it should result only after deliberate consideration. This was not a direct contempt proceeding, but was indirect in its nature. Burns' § 3-908 (1946 Repl.). This statute requires that the person charged shall be entitled to have served on him the charge which '. . . shall clearly and distinctly set forth the facts which are alleged to constitute such contempt, and shall specify the time and place of such facts with reasonable certainty. . . .'

The defendant has a reasonable opportunity to purge himself of such contempt, if it exists. Although the respondent judge says the hearing was in 'open court,' the verified statement of the trustee is to the effect that a conversation took place in the judge's chambers on the day she was ordered to appear, and that no formal hearing took place following the court's entry of an order holding her in contempt and removing her as trustee.

Regardless of the conflict on this point, these critical proceedings lacked, without question, the bare requirements of due process, namely, the right to be informed specifically of the charges and a reasonable opportunity to be heard thereon.

'It is a fundamental doctrine of the law that a party to be affected by a personal judgment must have a day in court, or an opportunity to be heard. In this connection, it is sometimes declared broadly that every man is entitled to an opportunity to be heard in a court of law

upon every question involving his rights or interests, before he is affected by any judicial decision on the question. The judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.' 30A Am. Jur., Judgments, § 26. See also: *Windsor* v. *McVeigh* (1876), 93 U.S. 274. 23 L. Ed. 914."

Due process requires that the notice given a defendant must also give that defendant an opportunity to make a ▮ defense. *State ex rel. Red Dragon Diner* v. *Superior Ct.* (1959), 239 Ind. 384, 158 N.E.2d 164.

In the case of *Town of Walkerton* v. *N.Y.C. & St.L.R.R. Co.* (1939), 215 Ind. 206, 214, 18 N.E.2d 799, it was said:

". . . Due process requires notice in some proper form and an opportunity to be heard before some tribunal, not necessarily a court or before a jury. *Campbell* v. *State* (1909), 171 Ind. 702, 87 N.E. 212. There must be a fair opportunity to be heard before the matter is finally determined. . . ."

Finally, this court held in the case of *Kaiser Alum. & Chem. Sales* v. *Dickerhoff* (1964), 136 Ind. App. 258, 199 N.E.2d 719 that an attorney must be given adequate time to ▮ prepare a defense and file any motions pertinent to the cause and that the denial of this time is a denial of due process of law. See, also, Indiana Constitution, Article I, § 12.

In the case at bar Attorney Clouse had no opportunity to file any answer or any other responsive pleading. He was given no opportunity to test the validity of the in- ▮▮ formation and the record discloses that the hearing ensued as soon as Attorney Clouse was handed the papers. The sufficiency of the information is subject to attack, and responsive pleadings are proper in a contempt action. *Holler* v. *State* (1914), 183 Ind. 268, 106 N.E. 364; *Stewart* v. *State* (1894), 140 Ind. 7; *Cheadle* v. *State* (1886), 110 Ind. 301.

For the reasons given and from the authorities cited above it is our opinion that the first contempt proceeding resulted in a fundamental denial of due process of law in that Attorney Clouse was given no opportunity to prepare a defense and adequately represent his client. Although we have held that this is a civil contempt, in the area of attorney preparation time a strong analogy exists between the criminal law and the case at hand. This court has held, in the case of *Hartman* v. *State* (1973), 155 Ind. App. 199, 292 N.E.2d 293, that the right to counsel involved in due process involves the corollary right to effective counsel. This court held that to have effective counsel, that counsel must have adequate preparation time. In the case at bar not only was the preparation time not adequate, it was non-existent.

The remaining issue in the first contempt conviction is the matter of the $1,000 fine assessed against the defendants. A fine is proper in civil contempt only to repair damage or to compensate the plaintiffs for injuries resulting from contempt. *Denny* v. *State, supra.*

The test for the determination of damages is set out in the case of *Chadwick* v. *Alleshouse* (1968), 250 Ind. 348, 233 N.E. 2d 162:

". . . Moreover, that determination or decision may be considered as final in all respects where, as here, it may readily be said that it was supported by substantial evidence of probative value."

We have hereinabove held that this first contempt action was civil in nature and the authorities cited herein establish that damages or fines must be compensatory and supported by substantial evidence. In the case at bar we find no evidence to support the $1,000 fine assessed. These requirements not having been met by the trial court, we necessarily hold that the $1,000 fine was improper and void and contrary to law.

The defendants were cited for criminal contempt at the second contempt proceeding because of the refusal of the defendants to pay the $1,000 fine discussed above. Inasmuch as we have determined that said fine was improper and void we hold that the criminal contempt conviction must be reversed, as a void order cannot serve as the basis of a contempt citation. *State ex rel. Taylor* v. *Circuit Court* (1959), 240 Ind. 84, 162 N.E.2d 90.

## Second Contempt Proceeding

Issues 1 and 4 raised by the second motion to correct errors relate to the jurisdiction matter discussed and resolved in the first portion of this opinion and present no new question to this court.

Issue 2 is based on insufficient evidence. The first segment of this issue relates to the damages assessed, based upon Indiana State Police costs incurred in connection with the rock festival. The court awarded $17,217, based on testimony of officers, but a field examiner for the State Board of Accounts, called by plaintiffs, testified that the $17,217 cost would have been incurred even if no rock festival had occurred. Damages must be supported by sufficient evidence, and the evidence does not support this award to the Indiana State Police. *Chadwick* v. *Alleshouse, supra.*

The second portion of this argument is based on the proposition that the second contempt citation was criminal in nature. The trial court in its second judgment specifically differentiated between criminal and civil contempt. We have heretofore held that the finding of criminal contempt was improper. The defendants in this section of argument contend that the evidence fails to show an intent by the defendants to commit contempt. The judgment of the court recognized that no evidence showed intent to defy authority of the court, as the verified answer of the defendants denied such intent and the trial court recognized that this answer was

binding on that court and specifically found no intent on the part of the defendants to defy authority of the court and at the same time found a civil contempt which required only actual intent to violate the court's order. *(Chadwick* v. *Alleshouse, supra.)*

Having determined that the second contempt citation was civil, it would be redundant to repeat all of the law applicable thereto. Suffice it to say that the basic elements discussed in the first portion of this opinion, i.e., the damages to recompense plaintiffs, information filed by the same parties, offense against parties rather than the dignity of the court, etc., are all present in the second contempt proceeding.

Finally, defendants contend that there was no evidence connecting the defendant Tom Duncan with the sale of tickets at the rock festival in violation of the restraining order. An examination of the record discloses conflicting testimony by the Deputy Sheriff as to whether or not Mr. Duncan could be identified as one of the ticket sellers. This, of course will not be reviewed by this court, as we look only to the evidence most favorable to the appellee where the evidence is conflicting. *(Chicago, Indpls. & Louisville R.R. Co.* v. *Carter* (1971), 149 Ind. App. 649, 274 N.E.2d 537, 539.)

Issue 3 is whether the court erred in overruling the motion to discharge the rule to show cause. Defendants cite Burns § 3-908, which requires that the rule to show cause set out the facts which are alleged to constitute the contempt along with the time and place of such facts. Defendants contend that the rule to show cause does not meet these requirements. However, the rule to show cause referred to the petition and information for contempt and made the same a part of and ordered it attached to the rule to show cause. The information incorporated with the rule to show cause fully meets all of the requirements of § 3-908, *supra.*

Issue 5 pertains to questions propounded by the plaintiffs concerning violations of the restraining order occurring on September 3, 4, and 5, 1972. Defendants objected at trial to any evidence of violations occurring after September 2, 1972.

The information charged contemptuous actions by the defendants occurred "after 1:00 o'clock P.M. on the 2nd day of September, 1972, . . . and continuously thereafter until said rock festival had concluded its activities. . . ." Thus, evidence concerning violations on September 3, 4, and 5, 1972, was admissible for the reason that the festival continued through said dates.

Issue 6 concerns the admissibility of evidence of damages resulting from the contemptuous conduct. Defendants contend that this evidence is not consistent with the pleadings, namely the information, and that the information does not ask for money damages and is misleading.

The information alleges violations of the restraining order and we have held that the proceedings were civil in nature. Our Supreme Court in *Duemling* v. *Fort Wayne Community Concerts, Inc.., supra,* stated:

> "We find this proceeding in harmony with that theory. It was brought, not in the name of the State, but rather in the name of the aggrieved party. It was filed in the civil proceeding out of which it grew, rather than as a separate proceeding. The relief asked was not punitive, but rather coercive, and the relief granted by the court was coercive rather than punitive. The judgment served to protect the interests of the aggrieved party. *Denny* v. *State* (1932), 203 Ind. 682, 182 N.E. 313."

Damages for injuries resulting from the contempt of the restraining order are proper if supported by the evidence. *Chadwick* v. *Alleshouse, supra.* The trial court had the right and duty to hear evidence relating to these damages and no error was committed in hearing such evidence.

Issue No. 7 deals with the alleged constitutional violations that arose when the trial court assessed the fines in this cause along with jail sentences if the fines were not paid. Defendants had filed with the trial court two affidavits for remission of fine; the first affidavit dealt with the $1,000 fine imposed at the first contempt proceeding and the second affidavit with the $31,319.41 damages imposed at the second proceeding. The petitions stated, in essence, that the Internal Revenue Service had levied upon all of the property of the defendants in the amount of $52,875; the State of Indiana and County of Posey had secured a writ of attachment against the property of the defendants; Milton J. Reis d/b/a Reis Catering Service, had petitioned the Vanderburgh Superior Court for a writ of attachment against all the property of the defendants; the City of Evansville had a writ of attachment ($10,000) attaching all the money and funds of the defendants. Defendants point out that with all of these attachments and liens against their property they properly informed the court that they did not have the funds to pay the damages assessed. The trial court overruled both affidavits.

Defendants contend that by overruling the affidavits in question and imposing the fines (or imprisonment) they were, in effect, being sent to prison for failing to pay a debt which would be in direct conflict with the Constitution of Indiana, Article I, § 22.

However, the Supreme Court of Indiana stated in the case of *Perry* v. *Pernet* (1905), 165 Ind. 67, 74 N.E. 619 that imprisonment in contempt is not imprisonment for debt within the meaning of the Constitution. See, also, *Duemling* v. *Fort Wayne Community Concerts, Inc.*, *supra.*

Defendants also contend that decisions by the United States Supreme Court, along with Indiana decisions, prohibit imprisonment for the failure to pay a fine when the defendant is unable because of his indigency to pay said fine. Defendants

cite the cases of *Williams* v. *Illinois* (1970), 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586 and *Tate* v. *Short* (1971), 401 U.S. 395, 91 S. Ct. 668, 28 L. Ed. 2d 130, where in criminal cases fines followed by imprisonment for failure to pay the same were held to be unconstitutional because of an invidious discrimination worked on a defendant solely because he was too poor to pay the fine. These cases found this practice to be a violation of the equal protection clause of the Fourteenth Amendment.

Our Supreme Court, in *Perry, supra,* stated as follows:

". . . and the court below, under the terms of said order of commitment, on the application of appellant and notice to the party to whom the money is due, has the power to discharge him from custody on his showing that his failure to pay said amount since the commitment is due to an actual inability to do so. . . .

It was said in *Hendryx* v. *Fitzpatrick, supra,* on page 814: 'We do not mean to be understood that the court has a general discretion to annul orders passed for the benefit of a party to the suit; but that where inability is shown to comply with the order-as, for instance, insanity, if the decree requires an act to be done, or poverty, if the decree is for the payment of money—it is according to the course of the court, and of all courts, to discharge the imprisonment, of which the end is proved to be unattainable."

In the case of *Brown* v. *Brown* (1933), 205 Ind. 664, 187 N.E. 836, our Supreme Court stated that when one has been imprisoned for failure to comply with an order (similar to the case at bar) and *where said defendant is able to show that he has not the actual ability to pay* for any one of a number of valid reasons, then said defendant is entitled to be discharged. The court went on to hold that a defendant cannot be kept imprisoned indefinitely because of a failure to pay support money where it is shown that he does not have an ability to make such payments and cites such a practice as being unconstitutional on the grounds of cruel and unusual punishment.

In this cause the defendants had the burden of proving they did not have the actual ability to pay the damages assessed. The defendants' affidavits standing alone were not specific enough to fully inform the trial court of their inability to pay. Said affidavits only alleged generalities as to the liens and attachments against their property, did not specifically identify the source and details of the liens and attachments nor the amounts of some of the attachments. And, finally, the defendants did not specify their assets, if any.

It is our opinion that these affidavits were not sufficient to show an inability to pay and the trial court properly denied the remission of the fine assessed against the defendants. Having found the affidavits to be deficient, defendants' constitutional argument becomes moot.

Issue No. 8 raises the question of whether the decision of the court was contrary to law and sets up several areas which the defendants believe are contrary to law.

The first ground is that the decision is contrary to law because the same is not sustained by sufficient evidence. We have heretofore discussed this issue and determined that said issue must be resolved at least in part, against the defendants.

The second ground is that the court erroneously held that the action was in civil contempt. There is no merit in this contention, as we have heretofore determined this to be civil contempt.

Defendants also contend once more that the decision is contrary to law because the court's restraining order was void for lack of jurisdiction. We have heretofore disposed of this argument by holding to the contrary and shall not consider this specification further.

The next ground is based upon the premise that the proceeding was in criminal contempt. Defendants contend that the

punishment was in excess of the court's authority, as the statute provides for fines not exceeding $500 in criminal contempt. Since this is civil contempt the fines were based on injuries done to the plaintiffs as a result of the contempt and were in a compensatory nature. Having determined this is a case of civil contempt, this specification raises no question.

Finally, the defendants assert that the decision was contrary to law because "the enjoining of defendants' business enterprise is contrary to Federal statutory law; and the court's decision restrains interstate commerce in violation of the Federal Constitution, being Article I, Section 8, Para. (3) thereof." Defendants contend that their business enterprise (rock festival) was in the nature of interstate commerce and that the Constitution of the United States prohibits the states from interfering with interstate commerce as this power was reserved in Article I § 8 for the Congress of the United States.

The rock festival, although it was held primarily in Illinois, was based in part at least in Indiana since all ticket sales were made in Indiana and all land traffic had to pass through Indiana. The restraining order did not enjoin interstate commerce (i.e., the holding of a festival in Illinois), it only enjoined the defendants from holding their rock festival in Indiana, and there is not a violation of the Constitution or a restraint on interstate commerce.

The basis of the restraining order was that the festival would be a danger to the safety and health of the citizens of Posey County, the State of Indiana, and persons attending the festival.

It is stated in 15 I.L.E., *Health and Safety*, § 1, p. 127, that:

"The power of the Federal government to regulate interstate commerce does not disable the State from adopting reasonable measures designed to secure the health and safety of its people, even though the legislation might indirectly affect the commerce of the country."

The court now, for the reasons set out above, reverses the contempt conviction decreed in the first proceeding herein.

The court further reverses the conviction for criminal contempt for failure to pay the $1,000 fine assessed in the first proceeding.

The court now finds that the civil portion of the second proceeding should be modified by the trial court's striking the award of $17,217, payable to the Indiana State Police for salaries and for other expenses from the judgment heretofore entered in this cause.

Cause remanded to the trial court for entry of a corrected judgment in compliance with the terms of this opinion. The civil portion of the second proceeding is now affirmed as hereinabove modified.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 303 N.E.2d 50.